# The United States, plaintiff in error, *vs*. Mordacai Cropper, defendant in error.

## *Error to Johnson.*

The Boards of Commissioners must deliver to the Clerks of the District Courts attested copies of the lists of Grand Jurors, thirty days previous to the term, otherwise the Grand Juries will not be legally chosen.

Lowe, for plaintiff in error.

Woodward, for defendant in error.

Per Curiam, Wilson, Justice.—This was an indictment for larceny, found at the May term 1841, of the District Court for Johnson county, against the defendant.

To the indictment the defendant pleaded that the persons by whom the indictment was found, as a Grand Jury, were not a legal Grand Jury, for the reasons that the County Commissioners of said county did not, within three days after the selection of said persons as a Grand Jury, deliver to the Clerk of the said District Court an attested copy of the names of the persons selected as such Grand Jury.

To this plea the district prosecutor replied, that S. B. Gardner, the Clerk of the District Court of said county, is now, and was, at the time of the selection of the Grand Jury, the Clerk of the Board of County Commissioners of said county, and as such, made a record of the list of said Grand Jurors upon the books of said Commissioners, as they were originally drawn and selected, which books were left in the possession of the Clerk of the District Court, at his office, within three days after the selection of said persons, as a Grand Jury, &c.

To this replication, the defendant demurred, which demurrer was sustained.

The errors assigned, are:

1. The sustaining the demurrer to the replication, put in to the in abatement.

2. That the court did not look back to the first error or defect in the proceedings which may be found in the plea in abatement, which does not, in legal contemplation, present matter sufficient to abate the indictment.

There are two separate laws, passed on the same day, prescribing the manner of selecting Grand Jurors. Both provide that the County Commissioners of each county, shall select twenty-three persons, to serve as Grand Jurors, thirty days previous to the sitting of the District Court. They differ but in two particulars, to wit: one requires the County Commissioners to make out and deliver to the Clerk of the District Court, the list of Grand Jurors, thirty days previous to the term; the other requires the Commissioners to make out the list thirty days previous to the term, and to deliver an *attested copy* within three days thereafter to the Clerk of the District Court.

Although the first statute referred to, does not require the list to be attested, yet the other making such requirement, being of the same date must have effect.

The copy of the names of the Grand Jurors, delivered by the County Commissioners to the Clerk of the District Court, should be attested, that is to say, it should bear the usual test of the Board of Commissioners, to wit: their seal.

The only question which remains is, whether the allegations in the plea, to wit: that S. B. Gardner, the clerk of the District Court of Johnson county, was at the time of selecting the grand jury, also the clerk of the board of commissioners, and, as such last mentioned clerk, made a record of the list of grand jurors aforesaid upon the books of the board of commissioners aforesaid, as they were originally drawn and selected, which books were left in the possession of the clerk of the District Court, within three days after the selection of such persons as a grand jury, would, if true, be a sufficient compliance with the statute. We think not. The statute is positive in its terms, and a defendant in an indictment for a criminal offence has a right to a strict compliance with the statute, and a strict construction of the law. The statute required an attested copy of the list of grand jurors to be made out and delivered to the clerk of the District Court, which was not done, and as the defendant made the objection at the proper time, and in the proper manner, we think the court below was correct in sustaining the objection.

Judgment affirmed.

MASON, CHIEF JUSTICE, DISSENTING.—We have two statutes prescribing the manner of selecting grand jurors, both bearing the same date. See laws of 1838–9 pages 112 and 278. The first requires the county commissioners to make out and deliver to the clerk of the District Court a *list* of twenty-three persons selected as grand jurors. The other directs that an *attested copy* of the names selected should be delivered in like manner. The former of these statutes seems to have been literally complied with, the latter not. Was the indictment thereby invalidated?

Where two statutes are simultaneously enacted, refering to the same subject, covering the same ground, and both merely directory, it seems by means perfectly clear to me that a compliance with either is not all that is requsite. But the present case is stronger than the proposition just laid down. It is the general act regulating criminal proceedings which only requires a "*list*" of the grand jury to be furnished to th clerk of the District Court. This appears to have been strictly com plied with. The act then proceeds to provide for all the other steps t be taken, up to the final conviction and sentence. Where these step have been accurately pursued, will the punishment be illegal because i another statute passed at the same time and only of equal authority, a similar mode of proceeding but differing slightly in detail, has beer pointed out? The proceedings authorized by the staute have the foun dation which the same statute requires. The basis is sufficient for the superstructure.

But my opinion does not rest upon that position. Admitting the statute which directs an "*attested copy*" to be filed, to be of paramount authority, does it follow that every deviation from the mode therein pointed out will vitiate the indictment? To fail to comply strictly with the statute is one thing, to deviate so far as to render all the proceedings invalid is another and a very different matter.

For example—the judge is required to give certain statutes in charge to every grand jury. If he should neglect to do so, could that fact be succesfully pleaded in abatement to all the indictments found by that jury? I believe it to be a sound rule that a deviation from a directory statute cannot be taken advantage of by a defendant, without there is a probability that he may have been thereby substantially prejudiced. (On this point also, see Laws of 1839, page 120, s. 93.) Thus, the justices' act provides that a summons should issue at least seven and be served five days before the return day, thereby giving the constable two days in which to make the service and the defendant five days thereafter to prepare for his appearance and defence. Suppose the summons to be issued only six days, but served full five days before the return day, can the defendant successfully object to the process on account of sufficient time not having been given to the constable in which to make service? The officer would in such case be guilty of no neglect of duty if he should fail to serve the process in due time, but the defendant would have no right to complain. Where a provision of this kind is made exclusively for the benefit of an officer of the court, it seems to me that he is the only one to object to a non-compliance therewith.

In the case at bar the county commissioners were required to furnish the clerk of the District Court with an "*attested copy,*" of the names of the grand jurors by them selected. What was the object of this reqirement? Evidently to give that clerk authentic information of the names he was to insert in the *venire*. Without such an "*attested copy*" he would not be obliged to issue a *venire* at all. If, however, he should do so upon other satisfactory information, inserting therein the precise names of the individuals selected by the county commissioners, would they not when duly impannelled and sworn, be a competent grand jury? Would any indictment they should present be invalid because the clerk of the board of commissioners had failed to attach his seal to the list filed with the clerk of the District Court? Especially when, as in the present case, these two clerkships were held by the same individual and the only defect was that he had failed to make out this list as clerk of the commissioners, and certify it under seal to himself as clerk of the

District Court. Can any possible prejudice result to the defendant in consequence of such omission?

It is true the law entertains objections in criminal proceedings, which would not be tolerated in civil cases, but this rule it seems to me should be limited to matters essential to a fair defence on the merits. It see no reason why the penal law should create needless opportunities for guilt to escape detection and punishment—why a defect of mere form, affording no test of guilt or innocence, should be any more available to a defendant in a criminal than in a civil case.

In fact, reasoning from principle, I should suppose a contrary rule would be far more defensible. A strict enforcement of the criminal code is of far more importance to the well being of society, than that of the civil. To give guilt an unnecessary means of escape is much more reprehensible and pernicious than to introduce defects in the laws for the enforcement of contracts. Every opportunity to escape on mere technical grounds is needlessly paralyzing *pro tanto*, the arm of the law; voluntarily diminishing the certainty with which punishment follows transgression and thus negatively at least, inviting the commission of offences. I would say then, give the accused every reasonable opportunity to enable him to vindicate his innocence, be liberally indulgent to his objections, to whatever might have a tendency to convict him unjustly, but never, unless from necessity, open an aperture through which guilt and innocence may alike escape with impunity.

I know a somewhat different rule was early adopted in the English courts and has been followed with rather a blind acquiescence in most of the States of the Union. That rule originated when the laws of England were written in blood, and was the result of the humanity of her judiciary. Struggling to weaken or evade the sanguinary edicts of tyrants. The judges had no power to annul or even to mitigate the law which affixed death as the penalty for many of the minor offences, but they could and did give the accused the benefit of delay, and even of ultimate escape, by sustaining objections to indictments for formal and trivial defects. If they could not modify the severity of punishments too severe humanity, prompted them to diminish their certainty.

With us the case is very different. Following the dictates of humanity and sound policy, we have gone far to revolutionize the penal code of our ancestors. Our legislators recognize the maxim that certainty of punishment is better than severity. Under these circumstances it seems to me the courts should do all they justly can to render punishment the inevitable consequence of transgression. Instead of blindly

adopting rules dictated by humanity, under circumstances so totally different, we should apply the principles of reason to our own laws and present situation. See the case of The United States vs. Dollarhide, decided at this term of the court. I therefore, respectfully dissent from the opinion of the court in the present case.